| Fill in this information to identify the case: | |
|---|---|
| Debtor name | Martin's Fishing Tools and Rentals, Inc. and Charles R. and Linda Martin |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF TEXAS |
| Case number (if known) | 17-70158 and 17-70159 |

Official Form 425A

# AMENDED Consolidated Joint Plan of Reorganization Under Chapter 11
12/17

In the Chapter 11 cases of Martin's Fishing Tools and Rentals, Inc. and Charles R. and Linda Martin (hereinafter referred to as "Martin's Fishing"), the Martin's Fishing file this their Amended Consolidated Joint Plan of Reorganization, Dated January 15, 2019

### Article 1: Summary

This Consolidated Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of the *Martin's Fishing* from proceeds realized from the sale or lease of assets and future income.

This Plan provides for:  **3**  classes of priority claims;
 **1**  classes of secured claims;
 **1**  classes of non-priority unsecured claims; and
 **1**  classes of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately **0** cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.

**Your rights may be affected. you should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

*NOTICE REGARDING THE PROPOSED SUBSTANTIVE CONSOLIDATION OF THE ESTATES OF MARTIN'S FISHING TOOLS & RENTALS, INC. AND CHARLES AND LINDA MARTIN:*

*MARTIN'S FISHING TOOLS & RENTALS, INC. (Case No. 17-70158) ("Martin's Fishing", along with its Affiliated Martin's Fishing, CHARLES AND LINDA MARTIN (Case No. 17-70159) ("Martin") (collectively the "Martin's Fishing") the Martin's Fishing in the above-referenced bankruptcy proceedings, jointly file this Martin's Fishing' Motion for Substantive Consolidation of Martin's Fishing' Estates and Confirmation of Consolidated Plan of Reorganization.*

*Debtor, Linda Martin is a 75% owner of Martin's Fishing. Prior to filing bankruptcy, Martin's Fishing operated an oil and gas rental and service company which leased down-hole as well as other machinery and equipment to oil and gas exploration and production companies in the Permian Basin of Texas. It has its headquarters at 5110 Southeast CR 2000 in Andrews County, Texas. The assets of Martin's Fishing consist of real property located in Andrews County, Texas, having a value of approximately $200,000, and personal property assets consisting primarily of oil and gas machinery and equipment having a fair market value estimated to be between $409,000 and $625,000.*

*The Martin's Fishing request that this Court exercise its equitable powers to substantively consolidate the Martin's Fishing for all purposes, including in connection with solicitation and acceptance of the Plan and with respect to distributions to creditors under the Plan.*

*The equitable doctrine of substantive consolidation allows a bankruptcy court to consolidate the assets and liabilities of separate legal entities, and to treat those assets and liabilities as held and incurred by a single entity. See Chem. Bank N.Y. Trust Co. v. Kheel, 369 F.2d 845, 847 (2d Cir. 1966); Eastgroup Props. V. S. Motel Assoc., Ltd., 935 F.2d 245 (11th Cir. 1991). The Third Circuit Court of Appeals posited the current test for substantive consolidation in the Owens Corning case, where the court concluded that the a proponent of consolidation must establish that the entities*

| Debtor | Martin's Fishing Tools and Rentals, Inc. | Case number (*if known*) 17-70158 |
|---|---|---|
| | Name | |

*(1) disregarded separateness so significantly that their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (2) post-petition, their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors. See In re Owens Corning, 419 F. 3d 195, 211 (3rd Cir. 2005). Further, the proponent of consolidation establishes a prima facie case where there is a clear demonstration that, prior to bankruptcy, the debtor entities disregarded corporate formalities, creating contractual expectations of creditors that they were in fact one indistinguishable entity; and, that in its pre-petition course of dealing, a creditor or creditors actually and reasonably relied upon the Martin's Fishing alleged unity. See id. at 212.*

*While the Fifth Circuit does not appear to have established its own standard, it has noted that the test for substantive consolidation is a balancing of the benefits of consolidation against the harms that result from consolidation. In re Permian Producers Drilling, Inc., 263 B.R. 510, 518 (W.D. Tex. 2000); see also, In re Mortgage Investment Co. of El Paso, Texas, 111 B.R. 604, 609-10 (Bankr. W.D. Tex. 1990). In this bankruptcy case there exist numerous factors which weigh in favor of substantive consolidation. We have the following: 1) common ownership, 2) common managers of the various companies, 3) commingling of funds, 5) intercompany payables and receivables as well as shared bookkeeping services; 5) joint and several liability of the Martin's Fishing since the majority of the indebtedness in the bankruptcy estates consists of unpaid employment taxes of Martin's Fishing for due the Internal Revenue Service as well as the Texas Workforce Commission for which the Martins' are liable as the individuals who controlled Martin's Fishing and were responsible for the payment of the taxes withheld from the compensation of the employees of Martin's Fishing.*

*The Martin's Fishing assert that the creditors as a whole are not prejudiced by substantive consolidation, and that any prejudice or harm that might be shown by individual creditors of the various bankruptcy estates is significantly outweighed by the benefits.*

*Upon the Court granting the request of the Martin's Fishing to substantively consolidate the bankruptcy estates into the estate of Martin's Fishing Tools & Rentals, Inc. (Case No. 17-70158), the Martin's Fishing respectfully request that the Court confirm the Consolidated Plan of Reorganization under the provisions of 11 U.S.C. § 1129(a)(15) whereby the value of the property to be distributed to creditors under the Plan is not less than the Martin's Fishing projected disposable income to be received during the 5-year period beginning on the date when the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.*

**Article 2: Classification of Claims and Interests**

2.01  **Class 1** ........................  Class One consists of Allowed Priority Tax Claims entitled to priority pursuant to 11 U.S.C. §507(a)(8). The amounts set forth below are the amounts claimed by the Federal, State or local taxing authorities on their Proofs of Claim. The Martin's Fishing' accountant will prepare and file the tax returns for 2017 to establish the exact amount due by the Estates, if any, for 1040 taxes. In the event of a dispute over the amounts due, the Bankruptcy Court will resolve the dispute through the claims reconciliation process.

Thus, the estimated Priority Tax Claims are broken into subclasses, as follows:

SUBCLASS 1.1 – FEDERAL TAX CLAIM: Subclass 2.1 consists of all pre-petition federal taxes assessed and unassessed against the Martin's Fishing entitled to priority under 11 U.S.C. §507(a)(8), exclusive of any 2017 federal tax claims which will be paid when such taxes become due. Subclass 2.1 consists of the following Claims:

| Debtor | Claim Amount |
|---|---|
| Martin's Fishing & Rentals, Inc. | $717,108.80 |
| Charles & Linda Martin, Individually | $555,544.01 |

SUBCLASS 1.2 – PRIORITY CLAIMS FOR STATE AND LOCAL TAXES: Subclass 2.2 includes all Allowed Priority Tax Claims for pre-Petition state and local taxing authorities entitled to priority in accordance with Section 507(a)(8)(B). Subclass 2.3 consists of the following Claims:

| Creditor | Debtor | Claim Amount |
|---|---|---|
| Andrews ISD | Martin's Fishing | $ 1,697.61 |
| Andrews County | Martin's Fishing | $ 544.94 |
| Andrews ISD | Charles & Linda | $ 26,658.28 |
| Andrews County | Charles & Linda | $ 3,816.28 |
| Texas Comptroller | Charles & Linda | $ 74,334.02 (Sales & Use) |
| Texas Comptroller | Martin's Fishing | $ 20,464.64 (Franchise Tax) |
| Texas Comptroller | Martin's Fishing | $ 320,538.54 (Sales & Use) |
| TX Workforce Com. | Martin's Fishing | $ 2,835.67 |
| TX Workforce Com. | Charles & Linda | $ 2,835.67 |

2.02 **Class 2** ......................... The claims of the Internal Revenue Service, to the extent allowed as secured claims under § 506 of the Code as well as the claims of Andrews Independent School District, Andrews County, and the Texas Comptroller of Public Accounts, to the extent allowed as secured claims under § 506 of the Code.

2.03 **Class 3** ......................... Class Three consists of all non-priority unsecured claims allowed under § 502 of the Code and are divided into Subclasses as follows:

SUBCLASS 3.1: <u>Administrative Convenience Class:</u> This Subclass consists of all Allowed Unsecured Claims totaling less than $20,000. These claims are estimated to total $7,693.20 in the estate of the individuals, Charles and Linda Martin, and the sum of $908,190.17 in the estate of Martin's Fishing Tools and Rentals, Inc., for total Allowed Unsecured Claims in the class of an estimated $915,883.37.

SUBCLASS 3.2: <u>General Unsecured Class:</u> This Subclass consists of all of the Unsecured General Claims for tax penalties as may be allowed and unpaid following the treatment of the holders of such claims for penalties not otherwise treated and extinguished in the Plan. This Subclass would include the tax penalty claims of the Internal Revenue Service, the Texas Comptroller of Public Accounts, and the Texas Workforce Commission.

2.04 **Class 4** ......................... Equity interests of the Debtor, and the interests of the individual Martin's Fishing, if any, in property of the estate.

All stock interests of Martin's Fishing Tools and Rentals, Inc., along with all interests of Charles and Linda Martin in any real or personal property not allowed as exempt.

**Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees**

3.01 **Unclassified claims** Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02 **Administrative expense claims** Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03 **Priority tax claims** Each holder of a priority tax claim will be paid, if not already extinguished.

3.04 **Statutory fees** All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.

3.05 **Prospective quarterly fees** All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.

## Article 4: Treatment of Claims and Interests Under the Plan

**4.01** **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | Impaired | Class 1 is impaired by this Plan, because each holder of a Class 1 Priority Claim, if not paid in full by the treatment afforded its claims which are secured by liens against property of the estate, are not projected to receive any further payments under the provisions of the Plan. Since this is a liquidating Plan which calls for the sale of all non-exempt assets in the individuals' and Martin's Fishing' estates, any unpaid claims after the extinguishment of the secured claims by payments provided in the Plan will not receive any further payments. |
| Class 2 – **Secured claim of Internal Revenue Service** | Impaired | This class consists of the income tax claims held by the Internal Revenue Service against the individual Martin's Fishing, Charles R. & Linda Martin in the sum of $507,576.90, plus interest on such claims through the date of the bankruptcy petition totaling $47,967.11. This class also consists of the unpaid FICA taxes of the Internal Revenue Service owed by Martin's Fishing Tools & Rentals, Inc. totaling $649,742.28, plus interest on such claims through the date of the bankruptcy petition of $67,366.52. Thus, the total claims in this class are $1,272,652.81, secured by tax liens against the Martin's Fishing' real and personal property. A recent appraisal of the machinery and equipment subject to the tax lien of the Internal Revenue Service reflects a liquidation value of approximately $409,000. The Martin's Fishing proposes to substantively consolidate the two cases and pay the total claims by the liquidation of the Martin's Fishing assets over the 5-year life of the Plan at an interest rate of 5% per annum. Big C Rentals, LLC, will lease and ultimately sell all of the vehicles, machinery and equipment for the sum of $409,000, and will receive credit against the purchase price for all payments which have been made since the filing of these bankruptcy cases on September 27, 2017. The terms of the lease and purchase agreement shall be prepared by the Liquidating Trustee who shall make quarterly disbursements to the IRS after withholding sufficient funds to pay all administrative costs including the preparation of tax returns for the liquidating trust and the payment of all taxes incurred by the trust. The deficiency claims of the IRS in the estimated sum of $863,653 will be placed in Class 3 and receive its pro rata share of any distributions made to the holders of General Unsecured Claims in such class. In addition to the liquidation of the oilfield machinery and equipment, the Liquidating Trustee shall sell all tracts of real property of the Debtors which are not allowed as exempt. The proceeds from the sale of the real property will also be paid over to the IRS to be applied against its secured claims.<br><br>Upon the confirmation of the Debtors' Plan, the Liquidating Trustee shall immediately take the necessary steps to list for sale all tracts of real property belonging to the individuals, Charles and Linda Martin, as well as the corporation, Martin's Fishing. The Court shall retain jurisdiction over the assets of the estate such that the Liquidating Trustee shall be able to use the provisions of Section 363 of the Code to sale the tracts of real property free and clear of all liens and encumbrances. The following tracts of real property are owned by the individuals, Charles and Linda Martin, and will be offered for sale by the Liquidating Trustee; |

| Description of Real Property | Estimated Value |
|---|---|
| • 5110 SE 2000, Andrews Co., TX | $75,000.00 |
| • 1360 SE 4701, Andrews Co., TX | $38,103.00 |
| • 4586 SE 1000, Andrews Co., TX | $74,000.00 |

The homestead of the Debtors, Charles and Linda Martin, which is located at 5359 SE 2000, Andrews Co., TX, and has an estimated value of approximately $371,000, will be the subject of an Offer in Compromise to be submitted to the IRS following the entry of a Final Decree in these bankruptcy cases. The homestead will not be administered by the Liquidating Trustee.

The corporation, Martin's Fishing, owns one tract of real property known as 1075 SE 5001, which is currently the subject of a contract of sale. The Bankruptcy Court has approved the sale of the real estate for the gross sales price of $56,675.00. Upon the closing of the sale the net proceeds will be held in the Debtor in Possession account of Martin's Fishing pending confirmation of this Plan of Reorganization or further order of the Court. The Liquidating Trustee, if such sale has not been closed prior to the entry of a Confirmation Order, shall close the sale, and use the net proceeds to pay the claims in the order of priority established in this Plan.

| Class 3 – Non-priority unsecured creditors | Impaired | Class 3 consists of all other Allowed Unsecured Claims against Martin's Fishing not placed in any other Class under the Plan. Each holder of an Allowed General Unsecured Claim shall receive, on account of its Allowed General Unsecured Claim, its Pro Rata share of Liquidating Trust Interests on the Effective Date (or as soon as reasonably practicable thereafter) and Distributions of Cash from the Distribution Reserve, subject to other applicable terms of this Plan and the Liquidating Trust Agreement. The claims in Class 3 are broken into two subclasses as follows: |
|---|---|---|

3.1 Administrative Convenience Class: This Subclass consists of all Allowed Unsecured Claims totaling less than $20,000. These claims are estimated to total $7,693.20 in the estate of the individuals, Charles and Linda Martin, as follows:

- Capital One Bank (USA) N.A. --   $    284.20;
- Capital One Bank (USA) N.A. --   $    216.14;
- Capital One, N.A. --                        $ 2,403.12;
- Wells Fargo Bank, N.A. --           $ 3,826.08;
- Windstream --                                $    963.66;

Total                                                   $ 7,693.20

In addition to the foregoing claims, this Subclass also consists of all Allowed Unsecured Claims in the estate of Martin's Fishing as follows:

- Airgas, USA, LLC --                     $  1,080.45;
- Airgas, USA, LLC --                     $  1,426.02;
- Internal Revenue Service --       $ 863,653.00;
- Production Jars, LLC --              $   17,869.34;
- WTG Fuels, Inc. --                        $   19,649.43;
- Wells Fargo Bank --                     $    3,826.08;
- Windstream --                                $       685.85;

Total --                                              $908,190.17.

| | | |
|---|---|---|
| | | 3.2 <u>General Unsecured Class:</u> This Subclass consists of all of the Unsecured General Claims for tax penalties as may be allowed and unpaid following the treatment of the holders of such claims for penalties not otherwise treated and extinguished in the Plan. This Subclass would include the tax penalty claims of the Internal Revenue Service, the Texas Comptroller of Public Accounts, and the Texas Workforce Commission. |
| Class 4 - **Equity security holders of the Debtor** | Impaired | Class 4 consists of the holders of Equity Interests in Martin's Fishing. On the Effective Date, all such Equity Interests shall be deemed cancelled, extinguished, and otherwise rendered null, void and no further force or effect, whatsoever, except for the sole purpose of effectuating and wind-up and termination of Martin's Fishing pursuant to the provisions of this Plan.<br><br>The Class 4 Claims are Impaired under the Plan. Holders of Claims in Class 4 are conclusively deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject the Plan. |

### Article 5: Allowance and Disallowance of Claims

5.01 **Disputed Claim:** A disputed claim is a claim that has not been allowed or disallowed [by a final nonappealable order], and as to which either:

(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02 **Delay of distribution on a disputed claim:** No distribution will be made on account of a disputed claim unless such claim is allowed by a final nonappealable order.

5.03 **Settlement of disputed claims:** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

### Article 6: Provisions for Executory Contracts and Unexpired Leases

6.01 **Assumed executory contracts and unexpired leases**

(a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:

None.

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 45 days after the date of the order confirming this Plan.

### Article 7: Means for Implementation of the Plan

7.01 Sale of Certain Personal Property Pursuant to the Terms of a Lease/Purchase Agreement.

7.1     On November 28, 2017, the Bankruptcy Court entered its Order Granting Debtor's Expedited Motion to Enter into a Lease Purchase Agreement Covering Property of the Estate, Martin's Fishing, which granted it the authority for the Debtor to enter into a Lease Purchase Agreement on an interim 90-day basis with Big C Rentals, LLC, located in Andrews, Texas ("Big C"). Big C is a Texas limited liability company owned 25% by Daniel Montoya, 25% by Shawn Carruth, 25% by Tony Morgan, and 25% by Michael Conner. They are all residents of Andrews, Texas. Daniel Montoya is the biological son of Linda Martin. Big C was formed to take over operations of Martin's Fishing Tools and Rental, Inc.  The Lease Purchase Agreement provides for Big C to lease essentially all of the oil and gas machinery and equipment owned by the Debtor and pay a monthly rental per month. The Lease also requires Big C to carry casualty insurance on the equipment naming the Debtor as loss payee. The initial term of the lease was for 90 days in order to allow the Debtor to prepare and propose a Chapter 11 Plan of Reorganization to pay the taxes owed to the IRS and a means by which to pay its other creditors. Big C would receive credit against the purchase price for all monthly payments made during the interim period provided the Court ultimately approves the Debtor's request to sell the property which is the subject of the lease pursuant to a Plan of Reorganization.

7.2     Sale of Equipment Free and Clear of Liens.  The Plan of Reorganization, therefore, provides that the Debtor will lease the same equipment which was the subject of the Lease Purchase Agreement authorized by the Bankruptcy Court to Big C free and clear of all liens and encumbrances. A new schedule of payments providing for gradually increasing monthly payments will be drawn and executed by the parties. All payments from the lease agreement will be paid into the Liquidating Trust and quarterly payments will be paid from by the Liquidating Trustee to the Internal Revenue Service. The agreement will call for total payments in the sum of $409,000 over not more than 5 years will be to be paid into the Liquidating Trust and after such sum is received the Liquidating Trustee shall be authorized to execute a bill of sale as well as any other appropriate conveyance documents to transfer good title to the listed equipment and vehicles to Big C. Net proceeds shall be used first to fully fund the payments due the Internal Revenue Service and once the IRS has been paid the quarterly installments due it over the life of the Plan then any and all tax claims owing by Martin's Fishing shall be fully extinguished. The remaining tax claims of the individual Debtors, Charles and Linda Martin, will be the subject of an Offer in Compromise to be submitted to the IRS following the entry of a Final Decree in these cases.

Sale of Tracts of Real Property Free and Clear of Liens.  Upon the confirmation of the Debtors' Plan, the Liquidating Trustee shall immediately take the necessary steps to list for sale all tracts of real property belonging to the individuals, Charles and Linda Martin, as well as the corporation, Martin's Fishing. The Court shall retain jurisdiction over the assets of the estate such that the Liquidating Trustee shall be able to use the provisions of Section 363 of the Code to sale the tracts of real property free and clear of all liens and encumbrances. The Debtors intend for the Liquidating Trustee to market and sell all non-exempt real property owned by them. The following tracts of real property are owned by the individuals, Charles and Linda Martin, and will be offered for sale by the Liquidating Trustee;

| Description of Real Property | Estimated Value |
|---|---|
| - 5110 SE 2000, Andrews Co., TX | $75,000.00 |
| - 1360 SE 4701, Andrews Co., TX | $38,103.00 |
| - 4586 SE 1000, Andrews Co., TX | $74,000.00 |

The homestead of the Debtors, Charles and Linda Martin, which is located at 5359 SE 2000, Andrews Co., TX, and has an estimated value of approximately $371,000, will be the subject of an Offer in Compromise to be submitted to the IRS following the entry of a Final Decree in these bankruptcy cases. The homestead will not be administered by the Liquidating Trustee.

The corporation, Martin's Fishing, owns one tract of real property known as 1075 SE 5001, which is currently the subject of a contract of sale. The Bankruptcy Court has approved the sale of the real estate for the gross sales price of $56,675.00. The Debtors propose for the Liquidating Trustee to close the sale and use, pursuant to the provisions of section 506(c), a portion of the proceeds to fund the unpaid administrative expenses owed by the Estates as well as fund the Liquidating Trust hereinafter created.

7.3     Creation of the Liquidating Trust.   On the Effective Date, the Liquidating Trust Agreement shall be executed, and the Liquidating Trust shall be established and become effective. In accordance with this Plan and the Liquidating Trust Agreement, the Liquidating Trust shall be established for the purpose of (i) collecting, receiving, holding, maintaining, administering, and liquidating the Liquidation Trust Assets; (ii) making all payments and Distribution to holders of Allowed Claims in accordance with the terms of this Plan; (iii) closing the Bankruptcy Cases; and (iv) otherwise implementing the Plan and finally administering the Estates. The Liquidating Trust shall not engage in a trade or business and shall conduct its

activities consistent with the Liquidating Trust Agreement. On and after the Effective Date, the Liquidating Trust shall perform and pay when due liabilities as described in the Plan, if any, related to ownership or operation of the Liquidating Trust Assets.

7.4     Transfer of Liquidating Trust Assets.  On the Effective Date, the Liquidating Trust Assets shall be transferred and assigned to the Liquidating Trust, but subject to the Liquidating Trust's obligations under the Plan and Liquidating Trust Agreement and subject to all properly perfected Liens not released pursuant to the terms of this Plan. The Liquidating Trustee, as trustee of the Liquidating Trust, shall be substituted as the plaintiff, defendant, or other party in all lawsuits in which either of the Martin's Fishing is, as applicable, a party as of the Effective Date. The conveyance of all Liquidating Trust Assets shall be accomplished pursuant to the Plan and the Confirmation Order, and shall be deemed effective upon the Effective Date. Any Person having a Lien, encumbrance, or other interest against any Liquidating Trust Assets shall be conclusively deemed to have consented to the transfer and assignment of such Liquidating Trust Assets to the Liquidating Trust by failing to object to confirmation of this Plan, except as otherwise provided in this Plan. The Liquidating Trustee may present such Order to the Bankruptcy Court as may be necessary to require third parties to accept and acknowledge such conveyance to the Liquidating Trust. Such Order may be presented without further notice other than as has been given in this Plan.

7.5     Conflicts Between Liquidating Trust Agreement and Plan.   In the event of any inconsistencies or conflict between the Liquidating Trust Agreement and this Plan, the terms and provisions of this Plan shall control.

7.6     Plan is Motion to Transfer.   To the extent necessary, this Plan shall be considered a motion pursuant to Sections 105, 363 and 365 of the Bankruptcy Code to transfer and assign to the Liquidating Trust, but subject to the Liquidating Trust's obligations under the Plan, any and all Liquidating Trust Assets as of the Effective Date. Any objections to such transfer and assignment must be made as an objection to Confirmation of this Plan to be heard at the Confirmation Hearing.

7.7     Issuance of Liquidating Trust Interest.   It is an integral and essential element of this Plan that the offer and issuance of Liquidating Trust Interest pursuant to this Plan, to the extent such Liquidating Trust Interest constitute securities under the 1933 Act, shall be exempt from registration under the 1933 Act and any State or local law, pursuant to Section 1145 of the Bankruptcy Code and any other applicable exemptions, without limitation. The Confirmation Order shall include a finding and conclusion, binding upon all parties to the Bankruptcy Cases, the Martin's Fishing, the Liquidating Trustee, the U.S. Securities and Exchange Commission and all other federal, state and local regulatory enforcement agencies, to the effect that the Liquidating Trustee is successor to the Martin's Fishing under this Plan pursuant to Section 1145 of the Bankruptcy Code, that the offer of the Liquidating Trust Interest is occurring pursuant to this Plan, that the offer of the Liquidating Trust Interest is in exchange for any Claim or Equity Interest, and that such offer and issuance, to the extent such Liquidating Trust Interest constitute securities under the 1933 Act, fall within the exemption from registration under the 1933 Act and any state or local law pursuant to Section 1145 of the Bankruptcy Code. In lieu of certificates evidencing the Liquidating Trust Interest, the Liquidating Trustee shall maintain a register of the names, addresses and interest percentages of the Liquidating Trust Beneficiaries based upon the provisions of this Plan, which designate the persons who are entitled to receive the Liquidating Trust Interest. The Liquidating Trust Interest may not be transferred, sold, pledged or otherwise disposed of, or offered for sale except for transfers by operation of law.

7.8     Cancellation of Equity Interests.   On the Effective Date, all Equity Interests in Martin's Fishing shall be terminated and extinguished and any certificates that previously evidenced ownership of those Equity Interests shall be deemed cancelled (all without further action by any Person or the Bankruptcy Court) and shall be null and void and such certificates shall evidence no rights or interests in Martin's Fishing. The Liquidating Trustee shall substitute for the Board of Directors and shall have the necessary authority, duties and responsibilities of the members of the board and officers of the corporation to prepare and file the final tax returns of Martin's Fishing.

7.9     Termination of Directors, Officers, and/or Managers of the Martin's Fishing.   Upon the transfer of all assets of Martin's Fishing, all of the directors, officers, and/or managers of Martin's Fishing shall be deemed terminated, and the Liquidating Trustee shall be deemed the sole officer, manager and member of each Debtor for purposes of effectuating the terms of the Plan, including the requisite authority to prepare and file the final tax returns of the Martin's Fishing.

7.10    Authority.  All actions and transaction contemplated under this Plan, including, but not limited to, any certificates, agreements or other documents to be executed in connection with (a) this transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust, (b) the issuance of the Liquidating Trust Interest, and (c) any mergers, consolidations, or dissolutions of the Martin's Fishing are and shall be authorized upon Confirmation of this Plan without the need of further approvals, notices or meetings of the Martin's Fishing' directors, officers, managers and/or members, other than notice provided by serving this Plan on (i) all known holders of Claims and (ii) all current holders of Equity Interests of the Martin's

Fishing. Specifically, all amendments to the certificates of incorporation and bylaws of the Martin's Fishing and all other corporate actions on behalf of the Martin's Fishing as may be necessary to put into effect or carry out the terms and intent of this Plan, including, without limitation, any mergers, consolidations, or dissolution of the Martin's Fishing, may be effected, exercised, and taken without further action by Martin's Fishing's directors, officers, managers and/or members with like effect as if effected, exercised and taken by unanimous action of the directors, officers, managers and/or members of Martin's Fishing, including the requisite authority to prepare and file the final tax returns of Martin's Fishing.

7.11    Preservation of Causes of Action and Rights.  All Causes of Action, rights of setoff and other legal and equitable defenses of Martin's Fishing or the Estates are preserved unless expressly released, waived, or relinquished under the Plan or the Confirmation Order, and shall vest in the Liquidating Trust as part of Liquidating Trust Assets. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that a Cause of Action will not be pursued against them.

Further, unless expressly released by the Plan or by an order of the Bankruptcy Court, any and all such claims and Causes of Action against third parties are specifically reserved, including but not limited to any such claims or Causes of Action relating to any counterclaims, demands, controversies, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, legal proceedings, equitable proceedings, and executions of any nature, type, or description, avoidance actions, preference actions, fraudulent transfer actions, strong-arm power actions, state law fraudulent transfer actions, improper assignment of interest, negligence, gross negligence, willful misconduct, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability,  duress, economic duress, defamation, control, interference with contractual and business relationships, breach of fiduciary duty, conversion, aiding and abetting, civil conspiracy, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful recoupment, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies, equitable subordination, debt re-characterization, substantive consolidation, securities and antitrust laws violations, tying arrangements, deceptive trade practices, breach or abuse of any alleged fiduciary duty, breach of any special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, malpractice, at law or in equity, in contract, in tort, or otherwise, known or unknown, suspected or unsuspected.

Unless expressly released by the Plan or by an Order of the Bankruptcy Court, Martin's Fishing may hold the following claims, all of which shall be preserved and transferred to the Liquidating Trust pursuant to the terms of this Plan:

- Preference claims under section 547 of the Bankruptcy Code;
- Fraudulent transfer and other avoidance claims arising under section 506, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code and various state laws;
- Unauthorized post-petition transfer claims including, without limitation, claims under section 549 of the Bankruptcy Code;
- Claims and Causes of Action owned by Charles & Linda Martin or Martin's Fishing against Corporate Business Solutions, Schaumburg, Illinois, RWI Business Services, Gurnee, Illinois, Strategic Tax Advisors, Inc., Buffalo Grove, Illinois, VAS and SMS, Buffalo Grove, Illinois, RWI Wealth Management, LLC, Strategic Implementation Services, LLC, Buffalo Grove, Illinois, Leech Tishman, Fuscaldo & Lampl, Pittsburgh, Pennsylvania, along with any of their affiliates, agents, accountants, attorneys and representatives, including their respective successors and assigns, for any breach of contract claims, commercial tort claims, fraud claims, malpractice claims, or any other such claims;
- Any and all claims and Causes of Action against any Affiliate of Martin's Fishing, including, without limitation, any other entity sharing common ownership with the Martin's Fishing including, but not limited to, (i) any Cause of Action listed above, (ii) any claims based on any intercompany debt or amounts borrowed by any Affiliate or related company of Martin's Fishing, and (iii) any Avoidance Actions, including any preferences and fraudulent transfers;
- Any and all claims and Causes of Action against Joe Torres, individually, or Joe L. Torres, P.C., Odessa, Texas, including, but not limited to, (i) any Cause of Action listed above, (ii) any claims based upon any amounts paid by Martin's Fishing or Charles & Linda Martin to Joe Torres, individually, or Joe L. Torres, P.C., along with any of their affiliates, agents, accountants, attorneys and representatives, including their respective successors and assigns, for any breach of contract claims, commercial tort claims, fraud claims, malpractice claims, or any other such claims;
- Any and all claims and Causes of Action, including Avoidance Actions, against any party listed in response to Question No. 3 on the Amended Statement of Financial Affairs of Martin's Fishing.

7.12    Standing Liquidating Trustee as Representative of the Estates.  The Liquidating Trustee shall be appointed representative of the Estates pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Liquidating Trust Assets. With regard to the Liquidating Trust Assets, the Liquidating Trust may enforce, sue on, and, subject to Bankruptcy Court approval (except as otherwise provided herein), sell, transfer, settle or compromise (or decline to do any of the

foregoing) any or all of the Causes of Action transferred to the Liquidating Trust. Except as otherwise ordered by the Bankruptcy Court, the Liquidating Trustee shall be vested with authority and standing to prosecute the Causes of Action transferred to the Liquidating Trust. The Liquidating Trustee and his or her attorneys and other professional advisors shall have no liability for pursuing or failing to pursue any such Causes of Action.

**Article 8      THE LIQUIDATING TRUST**

8.1     The Liquidating Trust.  The Liquidating Trust, duly organized under the laws of the State of Texas, is created for the purpose of Liquidating the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and making the Payments or Distributions to (i) certain holders of Allowed Claims from the Reserve Accounts and (ii) holders of Liquidating Trust Interest from the applicable Reserve Accounts. The Liquidating Trust Beneficiaries, who will be treated as grantors and deemed owners for federal income tax purposes, are the holders of Liquidating Trust Interest. The Liquidating Trust shall file federal income tax returns for the Liquidating Trust as a grantor trust pursuant to Section 671 of the Internal Revenue Code of 1986, as amended, and the Treasury Tax Regulations promulgated thereunder. The parties shall not take any position on their respective tax returns with respect to any other matter related to taxes that is inconsistent with treating the Liquidating Trust as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), unless any party receives definitive guidance from the Internal Revenue Service.

8.2     Funding of Res of Trust.  For all federal and applicable state and local income tax purposes, all Persons (including without limitation the Martin's Fishing, the Liquidating Trustee and the Liquidating Trust Beneficiaries) will treat the transfers and assignment of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries as (a) a transfer of the Liquidating Trust Assets directly to the Liquidating Trust Beneficiaries followed by (b) the transfer of the Liquidating Trust Assets by the Liquidating Trust Beneficiaries to the Liquidating Trust. The Liquidating Trust will be treated as a grantor trust for federal tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes. The Liquidating Trust Beneficiaries will be treated as the grantors and deemed owners of their allocable portion of the Liquidating Trust Assets for federal income tax purposes.

The fair market value of the portion of the Liquidating Trust Assets that is treated for U.S. federal income tax purposes as having been transferred to each Liquidating Trust Beneficiary will be determined by the Liquidating Trustee, and all parties (including, without limitation, the Liquidating Trustee and the Liquidating Trustee Beneficiaries) must utilize such fair market values determined by the Liquidating Trustee for federal and applicable state and local income tax purposes.

The Liquidating Trust's taxable income, gain, loss, deduction or credit will be allocated to the Liquidating Trust Beneficiaries in accordance with their relative beneficial interests in the Liquidating Trust during the applicable taxable period. Such allocation will be binding on all parties for federal and applicable state and local income tax purposes, and the parties will responsible for the payment of any federal, state and local income tax due on the income and gain so allocated to them.

8.3     Liquidating Trustee.    The Liquidating Trustee shall be Robin M. Green, attorney with the Law Offices of Robin M. Green, Lubbock, Texas. The Liquidating Trust shall be administered by the Liquidating Trustee.  The Liquidating Trustee shall administer the Liquidating Trust consistent with the terms of this Plan, Confirmation Order, general trust law (except as superseded by this Plan) and the Liquidating Trust Agreement, and shall have all of the rights, obligations, powers and duties as set forth in the Plan, Liquidating Trust Agreement and Confirmation Order.

8.4     Liquidating Trust Assets.    The Liquidating Trust Assets shall consist of any and all assets of Martin's Fishing which on the Effective Date shall be assigned, transferred and conveyed to the Liquidating Trust to be administered in accordance with the provisions of the Plan and the Liquidating Trust Agreement, as well as all non-exempt assets of the bankruptcy estate of the individual Debtors, Charles & Linda Martin.

8.5     Retention of Professionals.    The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Liquidating Trustee, are necessary to assist the Liquidating Trustee in performance of his duties.  The Liquidating Trustee shall be permitted to use a portion of the Liquidating Trust Expense Reserve to retain attorneys, accountants or other professionals that may be necessary to evaluate and/or effectuate the liquidation of the Liquidating Assets.  However, after initial payments are made for retention of such professionals, any further fees of such professionals shall be paid by the Liquidating Trust only after recovery and liquidation of the Liquidating Assets has begun, and such fees shall only be paid to the extent that such fees and expenses are related to Liquidating Assets that have actually been liquidated.  Subject to any further agreement with the Professionals, the Liquidating Trust shall bear its

own expenses. Professionals of the Debtor shall be eligible for retention by the Liquidating Trustee, and former employees of the Debtor shall be eligible for retention by the Liquidating Trust and Liquidating Trustee.

8.6  Compensation of the Liquidating Trustee.  For services rendered by the Liquidating Trustee in administering the Liquidating Trust, the Liquidating Trustee shall be compensated $350.00 per hour, or such lower amount as the Liquidating Trustee may agree.

8.7  Liquidating Trust Expenses.  Subject to the provisions of the Liquidating Trust Agreement, all costs, expenses and obligations incurred by the Liquidating Trustee in administering this Plan, the Liquidating Trust, or in any manner connected, incidental or related thereto, in effecting distributions from the Liquidating Trust thereunder (including the reimbursement of reasonable expenses) shall be a charge against the Liquidating Trust Assets remaining from time to time in the hands of the Liquidating Trustee. Such expenses shall be paid as they are incurred without the need for Bankruptcy Court approval.

8.8  Liability, Indemnification of Liquidating Trustee.  The Liquidating Trustee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as the Liquidating Trustee, other than acts or omissions resulting from such Person's willful misconduct, gross negligence or fraud.  The Liquidating Trustee may, in connection with the performance of his or her functions, and in his or her sole absolute discretions, consult with attorneys, accountant and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals.  Notwithstanding such authority, the Liquidating Trustee shall be under no obligation to consult with attorneys, accountants or his or her agents, and his or her determination to not do so should not result in imposition of liability on the Liquidating Trustee unless such determination is based on willful misconduct, gross negligence or fraud.  The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and his or her agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust or the implementation or administration of this Plan; provided, however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

8.9  Bonding Requirement.  Within five (5) Business Day after the Effective Date, the Liquidating Trustee shall, at the expense of the Liquidating Trust, procure a performance bond or bonds for the benefit of the Liquidating Trust in the amount of at least $10,000.00 written by an insurance or bonding company authorized to do business in the State of Texas.

8.10  Termination.  The duties, responsibilities and powers of the Liquidating Trustee shall terminate after all Liquidating Trust Assets, including Causes of Action transferred and assigned to the Liquidating Trust, are fully resolved, abandoned or liquidated and the Cash and other amounts held in Reserve Accounts have been distributed in accordance with this Plan and the Liquidating Trust Agreement. Except in circumstances set forth below, the Liquidating Trust shall terminate no later than five (5) years after the Effective Date.  However, if warranted by the facts and circumstance provided for in this Plan, and subject to the approval of the Bankruptcy Court upon a finding that an extension is necessary for the purpose of the Liquidating Trust, the terms of the Liquidating Trust may be extended one or more times (not to exceed a total of five extensions, unless the Liquidating Trustee received a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the state of the Liquidating Trust as a grantor trust for federal income tax purposes) for a finite period, not to exceed six months, based on the particular circumstances at issue.  Each such extension must be approved by the Bankruptcy Court with notice thereof to all of the unpaid beneficiaries of the Liquidating Trust. Upon the occurrence of the termination of the Liquidating Trust, the Liquidating Trustee shall file with the Bankruptcy Court a report thereof, seeking an order discharging the Liquidating Trustee.

8.11  Standing of the Liquidating Trust.  The Liquidating Trust shall be deemed an independent entity and shall have standing to sue and be sued in its own name in any court and to otherwise appear before any administrative body, tribunal or other proceeding.

### Article 9: General Provisions

**9.01  Definitions and rules of construction**

**Administrative Claim** shall mean any Claim in respect of costs or expenses of administration for the Proceeding that is allowed under Sections 503 and 507(a) of the

Bankruptcy Code.

**Administrative Claim Bar Date** shall mean the date that is thirty (30) days after the Effective Date, unless not a Business Day, in which case it will be the first Business Day thereafter.

**Ad Valorem Tax Claim** shall mean a Claim for taxes (together with any related interest, penalty, addition to tax or additional amount imposed by any Governmental Authority) which is assessed based upon the value of the Debtors' Asset and which is secured by a statutory Lien upon that Asset, or the net proceeds from the sale of such Asset, to the extent of the value of the interest of the holder of such Claim in the Debtors' interest in the Asset.

**Affiliate** shall mean any person or entity affiliated with the Debtors pursuant to Section 101(2) of the Bankruptcy Code.

**Allowed or Allowed Amount** shall mean the amount of any Allowed Claim.

**Allowed** shall mean, when used with respect to a Claim or Equity Interest, means the Claim or Equity Interest (as applicable) (a) to the extent that it is listed in the Schedules in a liquidated, non-contingent, and undisputed amount, but only if no proof of Claim or proof of Equity Interest is Filed with the Bankruptcy Court to evidence such Claim or Equity Interest on or before the Bar Date; (b) any Equity Interest registered in a Debtors' books and records as of the Petition Date; (c) as evidenced by a proof of Claim or proof of Equity Interest Filed on or before the Bar Date, but only to the extent asserted in a liquidated amount, and only if no objection to the allowance of the Claim or Equity Interest or no motion to expunge the proof of Claim or Equity Interest is Filed on or before the Claims Objection Deadline; or (d) to the extent allowed by a Final Order.

**Avoidance Action** shall mean any and all rights, claims or actions which the Debtors may assert on behalf of the Estates under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Sections 542, 544, 545, 546, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code, and any preference or fraudulent transfer action under any applicable state law, except to the extent that any such rights, claims, or actions are expressly released or waived in this Plan.

**Ballot** shall mean the ballot to be delivered with the Disclosure Statement to holders of Claims and Interests on which such holder will be able to vote to accept or reject the Plan. The Ballot may be different for holders of the various Claims and Interests.

**Bankruptcy Cases** shall mean collectively the Debtors' bankruptcy cases, each commenced by the filing of the voluntary petitions on September 27, 2017.

**Bankruptcy Code** shall mean the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* and all amendments thereto.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Western District of Texas, Midland/Odessa Division.

**Bankruptcy Clerk** shall mean the Clerk of the Bankruptcy Court located at Hipolito F. Garcia Federal Building and United States Courthouse, 615 East Houston Street, Room 597, San Antonio, Texas 78205.

**Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure and all relevant local rules of the Bankruptcy Court.

**Bar Date** shall mean January 31, 2018, being the deadline ordered by the Bankruptcy Court for Claimants to file Proofs of Claim in the bankruptcy cases of Martin's Fishing and Charles & Linda Martin.

**Claim** shall mean (i) a right to payment from the Debtor(s), whether or not such right is reduced to a judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtor(s), whether or not such right to an equitable remedy has produced a judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**Claimant** shall mean the holder of a Claim.

**Class** shall mean a category designated in the Plan of holders or owners of Claims or Interests that are substantially similar pursuant to Section 1122 of the Bankruptcy Code.

**Confirmation Date** shall mean the date of Confirmation.

**Confirmation Hearing** shall mean the hearing that will be held before the Bankruptcy Court in which the Debtors will seek Confirmation of the Plan pursuant to Section 1128 of the Bankruptcy Code, as such hearing(s) may be continued, rescheduled or delayed. The Confirmation Hearing has been set by the Bankruptcy Court on **March 5, 2019 at 10:00 a.m**. at 100 East Wall Street, Midland, Texas, Room P126, in Midland, Texas

**Confirmation Order** shall mean the Order of the Bankruptcy Court confirming the Plan.

**Contested Claims** shall mean Claims to which objections are timely filed or which are listed as disputed, contingent or unliquidated in the Schedules of the Debtors.

**Contingent Claim** shall mean any Claim listed in the Schedules as "contingent."

**Creditor** shall have the meaning set forth in Section 101(10) of the Bankruptcy Code.

**Debtors or Debtors-in-Possession** shall mean Martin's Fishing Tools and Rentals, Inc., a Texas corporation, and Charles & Linda Martin.

**DIP Account(s)** shall mean the Debtor-in-Possession bank accounts maintained by the Debtors.

**Disclosure Statement** shall mean the Disclosure Statement prepared and submitted by the Debtors with respect to the Plan, including all exhibits attached thereto, and prepared pursuant to the Bankruptcy Court's Orders and Section 1125 of the Bankruptcy Code and, if applicable, Bankruptcy Rule 3018(b) for the Solicitation of Ballots, and all supplements and amendments thereto.

**Disputed** shall mean the portion (including, when appropriate, the whole) of a Claim or Equity Interest that is not an Allowed Claim or Allowed Equity Interest as to which: (a) a proof of Claim or proof of Equity Interest has been File, or deemed Filed under applicable law or Order of the Bankruptcy Court; (b) an objection has been or may be timely Filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or in part pursuant to a Final Order, or (iii) granted in whole or part pursuant to a Final Order. Before the time that an objection has been or may be Filed, a Claim or Equity Interest shall be considered a Disputed Claim or Equity Interest (a) if the amount or classification of the Claim or Equity Interest specified in the proof of Claim or proof of Equity Interest exceeds the amount or classification of any corresponding Claim or Equity Interest is listed by a Debtor in its Schedules, to the extent of such excess; (b) in its entirety, if any corresponding Claim or Equity Interest is listed by a Debtor in its Schedules as disputed, contingent, or unliquidated; or (c) in its entirety, if no corresponding Claim or Equity Interest has been listed by a Debtor in its Schedules.

**Distribution Date(s)** shall mean the date(s) when the Liquidating Trustee shall pay out the funds from the sale of unencumbered, non-exempt assets of the Estate. The Debtors anticipate that the first Distribution Date will be on 90 days following the Effective Date of the Plan.

**Distribution Reserve** shall mean either (a) a segregated account established by the Liquidating Trustee, or (b) a book entry account, in the sole discretion of the Liquidating Trustee, established in accordance with Section 10.4 of this Plan, from which Distributions to holders of Liquidating Trust Interests shall be made.

**Effective Date** shall mean the ninetieth (90th) day following the date when the Confirmation Order becomes final, if the Confirmation Order has not been stayed on appeal, or if such a stay has issued, immediately after such stay is dissolved by Final Order. The Effective Date may sometimes be referred to as the Consummation Date.

**Equity Interest** shall mean an existing membership, stock, partnership, and/or equity interest in either of the Debtors including, without limitation, all issued, unissued, authorized or outstanding shares of stock or other

equity interests (including common and preferred) of the Debtors, together with any warrants, options, other derivative securities, or contractual rights to purchase or acquire any such membership or equity interests at any time and all rights arising with respect thereto.

**Estate(s)** shall mean the estate(s) created by Section 541 of the Bankruptcy Code upon commencement of the case under Chapter 11 of the Bankruptcy Code.

**Executory Contract or Unexpired Lease** shall mean an executory contract or unexpired lease within the meaning of Section 365 of the Bankruptcy Code, in effect between or among the Debtor(s) and any other Person or Persons as of the Petition Date.

**Face Amount** shall mean (a) when used in reference to a Disputed or Disallowed Claim, the full stated amount claimed by the holder of such Claim in any proof of claim timely Filed or otherwise deemed timely Filed by a Final Order or other applicable bankruptcy law, and (b) when used in reference to an Allowed Claim, the Allowed Amount of such Claim.

**Filed** shall mean filed with the Clerk of the Bankruptcy Court.

**Final Order** shall mean an order of the Bankruptcy Court or any appellate court thereof that has not been reversed, modified, amended or stayed, and the time for appeal or to seek review or certiorari or rehearing thereof has expired and as to which no appeal, review or rehearing is pending, and has become conclusive of all matters adjudicated thereby and is in full force and effect.

**Insider** shall mean the various persons and entities listed under section 101(31) of the Bankruptcy Code.

**IRS** shall mean the Internal Revenue Service.

**Liquidating Trust** shall mean the Liquidating Trust created under the Liquidating Trust Agreement for the benefit of the Liquidating Trust Beneficiaries.

**Liquidating Trust Agreement** shall mean the Liquidating Trust Agreement to be executed by the Debtors and the Liquidating Trustee.

**Liquidating Trust Assets** shall mean all legal and equitable interests of the Debtor, Martin's Fishing, in its assets, real and personal, including, without limitation, all Cash, accounts, receivables, contract rights, general intangibles, and rights relating thereto, real property, personal property, Causes of Action (to the extent not settled or released pursuant to the Plan), and all books and records of the Debtors. The Liquidating Trust Assets shall also expressly include all non-exempt assets of Charles & Linda Martin. The Liquidating Trust Assets shall be assigned, transferred and conveyed to the Liquidating Trust on the Effective Date to be administered in accordance with the provisions of the Plan and the Liquidating Trust Agreement by the Liquidating Trustee.

**Liquidating Trust Beneficiaries** shall mean, collectively, the holders of Liquidating Trust Interests.

**Liquidating Trust Expense Carveout** shall mean cash in an amount up to $100,000 to be funded from any sales of the non-exempt assets of Charles & Linda Martin.

**Liquidating Trust Expense Reserve** shall mean either (a) a segregated account established by the Liquidating Trustee, or (b) a book entry account, in the sole discretion of the Liquidating Trustee.

**Liquidating Trust Interests** shall mean a beneficial interest in the Liquidating Trust.

**Liquidating Trustee** shall mean Robin M. Green of the Law Offices of Robin M. Green, Lubbock, Texas, who shall administer the Liquidating Trust pursuant to the terms of the Plan, the Liquidating Trust Agreement and the Confirmation Order.

**Liquidating Trustee Objection Deadline** shall mean the date that is seven (7) days prior to the Confirmation Hearing.

**Net Real Estate Proceeds** shall mean the net proceeds received by the Liquidating Trust after the sale of the real property owned by the Debtors and after payment of any costs related to the sale, including, but not limited to, any commissions, marketing expenses or other costs included on any closing statement or document executed in conjunction with the sale of the tracts of real property owned by the Debtors which are non-exempt.

**Objection Date** shall mean the date immediately preceding the last day for filing written acceptances or rejections of the Plan.

**Person** shall mean an individual, corporation, partnership, limited liability company, association, joint-stock company, joint venture, estate, trust, unincorporated organization, governmental unit or any political subdivision thereof.

**Petition Date** shall mean the date on which Martin's Fishing and Charles & Linda Martin filed their petitions for relief under Chapter 11 of the Bankruptcy Code, which was September 27, 2017.

**Plan** shall mean the Debtors' Consolidated Joint Plan for Liquidation of Estate Assets, as it may be amended, modified and/or supplemented from time to time pursuant to the Bankruptcy Code.

**Preference** shall mean any transfer of an interest of the Debtor(s) that is avoidable under Section 547 of the Bankruptcy Code.

**Priority Claim** shall mean any Claim, to the extent entitled to priority in payment under Section 507(a) of the Bankruptcy Code, other than an Administrative Claim, that (1) has not been barred by the Plan and (2) has not been disallowed by a Final Order.

**Priority Non-Tax Claims** shall mean any Priority Claim other than a Priority Tax Claim, Administrative Claim or Professional Claim.

**Priority Tax Claim** shall mean any Claim of a governmental authority that is entitled to priority in payment under Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**Proceeding** shall mean the cases for reorganization of the Debtors pending before the Bankruptcy Court.

**Professional** shall mean any Person employed in the Bankruptcy Cases pursuant to Sections 326, 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

**Professional Claim** shall mean any Claim that is Filed by a Professional pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

**Pro Rata** shall mean the proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate Face Amount of all Allowed Claims in such Class.

**Proof of Claim** shall mean a proof of claim conforming to Bankruptcy Official Form 410.

**Reserve Accounts** shall mean, the Liquidating Trust Expense Reserve, Distribution Reserve and Disputed Claim Reserve established by the Liquidating Trustee pursuant to this Plan.

**Secured Claim** shall mean any Claim that is considered secured under Section 506(a) of the Bankruptcy Code.

**Secured Creditors** shall mean all Creditors who hold a lien, security interest, or other encumbrance that has been properly perfected as required by law with respect to property owned by the Debtors.

**Senior Claim Reserve** shall mean either (a) a segregated account established by the Liquidating Trustee, or (b) a book entry account, in the sole discretion of the Liquidating Trustee, and which shall be funded on the Effective Date, or as soon thereafter as funds become available, from the Net Real Estate Proceeds to pay Allowed Administrative Claims, Allowed Professional Claims.

**Subordinated Claim** shall mean any Claim (a) arising from rescission of a purchase or sale of a Security of any of the Debtors or of an affiliate of any of the Debtors, (b) for damages arising from the purchase or sale of such a Security, (c) for reimbursement or contribution allowed under Section 502 of the Bankruptcy Code on account of a Claim described in (a) or (b) above, (d) otherwise subordinated pursuant to Section 510 of the Bankruptcy Code, (e) subordinated by Final Order, (f) based on fines, penalties, forfeiture or for multiple, exemplary, or punitive damages, or (g) any Claim of any Insider of the Debtors.

**Texas Comptroller** shall mean the Texas Comptroller of Public Accounts.

**Unliquidated Claim** shall mean any Claim that is listed in the Schedules as "unliquidated."

**Unsecured Claims** shall mean all Claims not secured by a lien in or other encumbrance upon the property interests of the Debtors.

**Unsecured Creditors** shall mean any and all Creditors having Unsecured Claims, including but not limited to Claimants holding Unsecured Deficiency Claims.

**Unsecured Deficiency Claims** shall mean all Allowed Claims of creditors that are deemed to be unsecured following valuation of the Debtor's property as a result of either a Section 506 Valuation hearing, the Bankruptcy Court or the District Court's order determining the nature, extent or validity of a creditor's lien on the Debtor's property that is not stayed on appeal, or the agreement of the parties, due to the fact that the value of the collateral securing repayment of a claim against property of the estate is less than the amount of such allowed claim as determined by the provisions of Section 506 of the Bankruptcy Code, or the remaining claims owed a secured creditor following the liquidation of all of its collateral.

**Article 10.**

| 10.02 | **Effective Date** | The effective date of this Plan is the first business day following the date that is 90 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
|---|---|---|
| 10.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 10.04 | **Binding Effect:** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 10.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 10.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 10.07 | **Corporate Governance** | All powers of the Board of Directors of Martin's Fishing shall vest and be attributed to the Liquidating Trustee as of the Effective Date of the Plan. |
| 10.08 | **Retention of Jurisdiction** | Notwithstanding entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction over the Bankruptcy Cases for the following purposes: |

(i) to determine any and all objections to the allowance of Claims or Equity Interests, both before and after the Confirmation Date, including any objections to the classification of any Claim or Equity Interest;

    (ii)    to determine any and all applications for fees and expenses authorized to be paid or reimbursed in accordance with Section 503(b) of the Bankruptcy Code or this Plan;

    (iii)    to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which either of the Debtors is a party or with respect to which it may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases, and to hear and determine and, if need be, to liquidate any and all Claims arising therefrom;

    (iv)    to hear and determine any and all actions initiated by the Liquidating Trustee, whether by motion, complaint or otherwise;

    (v)    to determine any and all applications, motions, adversary proceedings and contested matters pending before the Bankruptcy Court on the Confirmation Date or Filed or instituted after the Confirmation Date;

    (vi)    to modify this Plan, the Disclosure Statement or any document created in connection with this Plan, or remedy any defect or omission or reconcile any inconsistency in any Order of the Bankruptcy Court, this Plan, the Disclosure Statement or any document created in connection with this Plan, in such manner as may be necessary to carry out the purposes and effects of this Plan to the extent authorized by the Bankruptcy Code;

    (vii)    to ensure that the Distributions are accomplished in accordance with the provisions of this Plan;

    (viii)    to Allow, Disallow, determine, liquidate, or estimate any Claim or Equity Interest, and to enter or enforce any Order requiring the Filing of any such Claim or Equity Interest before a particular date;

    (ix)    to enter such Orders as may be necessary to interpret, enforce, administer, consummate, implement and effectuate the operative provisions of this Plan, the Confirmation Order and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate Orders to protect the Estates from creditor actions;

    (x)    to hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

    (xi)    to enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

    (xii)    to determine such other matters as may arise in connection with this Plan, the Disclosure Statement or the Confirmation Order, ;

    (xiii)    to enforce all Orders, judgments, injunctions, and rulings entered in connection with the Bankruptcy Cases;

    (xiv)    to determine all issues relating to the Claims of the IRS, and other taxing authorities, state or federal;

    (xv)    to determine any Avoidance Actions;

    (xvi)    to enter a Final Order and final decree closing the Bankruptcy Cases;

    (xvii)    to determine any matter or issue related to establishment, creation, administration or function of the Liquidating Trust or the Liquidating Trust Agreement; and

    (xviii)    to determine any matter or issue related to the Liquidating Trustee.

<u>Exclusive Jurisdiction</u>.  The Bankruptcy Court shall have exclusive jurisdiction to resolve all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation or administration of this Plan, the Confirmation Order, the Disclosure Statement, or the Liquidating Trust Agreement and all entities shall be enjoined from commencing any legal or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body.

## Article 11: Discharge

**11.01**     **Discharge of Charles & Linda Martin pursuant to § 1141(d)(5).**

Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. The remaining tax claims of the individual Debtors, Charles and Linda Martin, will be the subject of an Offer in Compromise to be submitted to the IRS following the entry of a Final Decree in these cases.

**Discharge of Martin's Fishing.** On the effective date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

       (i) imposed by this Plan; or

       (ii) to the extent provided in § 1141(d)(6).

## Article 12: Other Provisions

> The Debtors hereby move the Bankruptcy Court, pursuant to Bankruptcy Rule 3012, to value the assets owned by the Debtors subject to the Claims of Secured Creditors under the provisions of the Plan for the purposes of determining the amounts to be distributed to holders of such Secured Claims that do not accept the Plan and for determining the value of the Debtors' equity in assets otherwise retained by them in the Plan. Any objection to the valuation must be filed by the objection deadline established by the Court prior to the Confirmation Hearing, or be deemed waived.
>
> The Debtors further move for the Court to allow pursuant to the provisions of section 506(c) of the Code the use of proceeds from the sale of a 5-acre tract of land owned by Martin's Fishing for the purpose of funding administrative costs and expenses associated with the administration of the estate and the creation of the Liquidating Trust.

Respectfully submitted,

**X**   /s/ David R. Langston
     David R. Langston
     State Bar No. 11923800
     Mullin Hoard & Brown, L.L.P.
     1500 Broadway, Suite 700
     Lubbock, Texas 79401

     ***Attorneys for the Debtors, Martin's Fishing and Charles & Linda Martin***